UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:12-cv-00306-MOC-DLH

| | |
|---|---|
| JULIA A. QUEEN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | MEMORANDUM OF DECISION |
| ) | and |
| Vs. ) | ORDER |
| ) | |
| HAYWOOD REGIONAL MEDICAL CENTER ) | |
| MEDICAL CARE PLAN ) | |
| HAYWOOD REGIONAL MEDICAL CENTER ) | |
| MEDWEST HEALTH SYSTEM, INC. ) | |
| HAYWOOD REGIONAL MEDICAL CENTER, ) | |
| A HOSPITAL AUTHORITY ) | |
| WESTCARE, INC. ) | |
| HAYWOOD REGIONAL MEDICAL CENTER ) | |
| EMPLOYEE BENEFIT PLAN-LIFE ) | |
| INSURANCE, ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the court on defendants' Motion to Dismiss and Motion for Summary Judgment. After thorough briefing of those motions, the court heard oral arguments on July 14, 2014. For the reasons that follow, the Motion to Dismiss will be denied and the Motion for Summary Judgment will be denied on the issue of judicial estoppel, but otherwise allowed.

**FINDINGS and CONCLUSIONS**

I.  **Substantive Background**

Plaintiff was employed by the Defendant Haywood Regional Medical Center ("HRMC") as an Employment Manager from June 16, 2008, through her termination on August 30, 2010. She initiated this action on August 20, 2012, and filed an Amended Complaint on October 26,

1

2012, asserting claims for interference and retaliation under the Family medical Leave Act ("FMLA") and a claim under the Employee Retirement Income Security Act of 1974 (ERISA), which concerned a denial of benefits under the Haywood Regional Medical Center Care Plan (Care Plan).[1]

As to her FMLA claim, plaintiff alleges that she was terminated in violation of the FMLA while she was on approved leave to care for her minor son who had a serious medical condition. As to her ERISA claim, plaintiff contends that during her employment her minor son was entitled to medical benefits under the Care Plan, including benefits for private home nursing care; that defendants improperly denied her son benefits for the Nursing Care; that she appealed the denial; and that such denial was wrongfully sustained by defendants. As a result of the denial of benefits, plaintiff alleges that she incurred in excess of $10,000 for home or private nursing care for the period February 7, 2010, to May 23, 2010.

### II.     Background Relevant to Standing and Judicial Estoppel

During the course of discovery, the plaintiff revealed that she had filed for Chapter 7 bankruptcy protection in March 2012, prior to initiating this action. The United States Bankruptcy Court for the Western District of North Carolina issued a Final Decree in that bankruptcy on May 20, 2013; thus, this action was filed by plaintiff during the course of her bankruptcy proceeding without receiving permission of the bankruptcy trustee or revealing to the bankruptcy court that she had an asset in the form of this litigation.

On September 20, 2013, the plaintiff filed a motion to reopen her bankruptcy case to disclose this action as a potential asset and to allow the Trustee to review her claims. Five days

---

[1] The Plaintiff also asserted a claim under ERISA with respect to alleged improper insurance premium deductions for a life insurance policy that was offered under the Care Plan. As noted in the Defendants' summary judgment motion, the Plaintiff, through counsel, has conceded this cause of action, and therefore, summary judgment is appropriate as to this claim.

later, on September 25, 2013, the defendants filed a motion to dismiss this action on the grounds that the plaintiff did not have standing to bring suit while she was in bankruptcy because any claims belonged to the bankruptcy Trustee. On October 10, 2013, the bankruptcy court granted the plaintiff's motion to re-open her bankruptcy case, finding that the plaintiff's failure to disclose the action was inadvertent.

Plaintiff subsequently amended her bankruptcy petition to include her claims against the defendants as asserted in this action. The Trustee then filed a report with this court, advising that he had received approval of a compromise allowing the proceeds of any recovery on the claims to be divided among the plaintiff, plaintiff's counsel, and the bankruptcy estate. The Trustee further stated his belief "that it is fair and equitable that the claims of Julia Queen against Defendants in this action be prosecuted." Report (#56) at 2.

On November 1, 2013, the defendants filed a Motion for Summary Judgment seeking dismissal of all of the plaintiff's claims on the grounds of judicial estoppel. Alternatively, the defendants argued that they were entitled to judgment as a matter of law on the merits. The plaintiff filed a response in opposition to the defendants' motion, arguing in part that her ERISA claims were not ripe for adjudication because the administrative record was not before the Court. In response to this argument, the defendants submitted the administrative record as an exhibit to their reply brief. The defendants submitted affidavits and other materials in support of their reply as well. Plaintiff objected to the filing of these materials, as they were not filed with the defendants' original motion. On January 31, 2014, the court entered an Order holding the defendants' motions in abeyance and giving the Trustee an opportunity to ratify, join, and/or be substituted as the real party in interest. The Trustee subsequently filed a motion to ratify the action, which the court granted. On March 24, 2014, the court entered an Order overruling the

Plaintiff's objections to the Defendants' reply brief, but allowing the Plaintiff to file a surreply brief to address this newly submitted material. Plaintiff filed her surreply brief on April 4, 2014.

## II. DISCUSSION

### A. Motion to Dismiss

Defendants argue that the plaintiff had no standing to file this lawsuit, as any claims that the plaintiff has belong to the Trustee. They contend that this case must be dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

Rule 12(b)(1) provides for dismissal where the court lacks jurisdiction over the subject matter of the lawsuit. Lack of subject-matter jurisdiction may be raised at any time either by a litigant or the court. Mansfield, C. & L.M.R. Co. v. Swan, 111 U.S. 379, 382 (1884). The ability of the court to independently address subject-matter jurisdiction is important to finality inasmuch as a litigant, even one who remains silent on the issue of jurisdiction, may wait until they receive an adverse judgment from a district court and raise the issue of subject-matter jurisdiction for the first time on appeal, thereby voiding the judgment. Capron v. Van Noorden, 2 Cranch 126, 127, 2 L.Ed. 229 (1804). The Federal Rules of Civil Procedure anticipate this issue and provide that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed.R.Civ.P. 12(h)(3). When a court considers its subject-matter jurisdiction, the burden of proof is on the plaintiff. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). In Richmond, Fredricksburg & Potomac R.R. Co. V. United States, 945 F.2d 765 (4th Cir. 1991) (Ervin, C.J.), the Court of Appeals for the Fourth Circuit held, as follows

> In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment. Id.; Trentacosta v. Frontier Pacific Aircraft Indus., 813 F.2d

> 1553, 1558 (9th Cir.1987). The district court should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists. Trentacosta, supra, 813 F.2d at 1559 (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323-24, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986)). The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law. Trentacosta, supra, 813 F.2d at 1558. A district court order dismissing a case on the grounds that the undisputed facts establish a lack of subject matter jurisdiction is a legal determination subject to de novo appellate review. Revene v. Charles County Comm'rs, 882 F.2d 870, 872 (4th Cir.1989); Shultz v. Dept. of the Army, 886 F.2d 1157, 1159 (9th Cir.1989).

Id. at 768-69. Where jurisdictional facts are intertwined with facts central to the substance of a case, a court must find that jurisdiction exists and consider and resolve the jurisdictional objection as a direct attack on the merits of the case. United States v. North Carolina, 180 F.3d 574, 580 (4th Cir. 1999).

Subsequent to the filing of this action, as recited above, the plaintiff moved to re-open her bankruptcy case and amend her bankruptcy petition to include her claims against the Defendants as asserted in this action. The Trustee further has ratified this action and has consented it to the case proceeding. Under these circumstances, a dismissal for lack of standing is not warranted, and the Defendants' Motion to Dismiss will be denied.

**B.    Motion for Summary Judgment**

In their summary judgment motion, the defendants first argue that the plaintiff's claims are barred under the doctrine of judicial estoppel because she concealed these claims from her bankruptcy estate. The defendants then argue that the plaintiff's claims fail on their merits, as the plaintiff has offered no genuine issue of material fact to support her claim that the defendants violated her rights under the FMLA, and she has offered no evidence that the Plan Administrator for the Care Plan abused its discretion in denying her benefits under the Plan.

5

Consideration of a Motion for Summary Judgment starts with Rule 56(a), Federal Rules of Civil Procedure, which provides, as follows:

> A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Fed.R.Civ.P. 56(a). The rule goes on to provide procedures for plaintiff to use in responding to a Motion for Summary Judgment:

> **(c) Procedures.**
> (**1**) **Supporting Factual Positions.** A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> **(2) Objection That a Fact Is Not Supported by Admissible Evidence.** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> **(3) Materials Not Cited.** The court need consider only the cited materials, but it may consider other materials in the record.
>
> **(4) Affidavits or Declarations.** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed.R.Civ.P. 56(c). On a motion for summary judgment, the moving party has the burden of production to show that there are no genuine issues for trial. Upon the moving party's meeting

that burden, the non-moving party has the burden of persuasion to establish that there is a genuine issue for trial.

> When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. In the language of the Rule, the nonmoving [sic] party must come forward with "specific facts showing that there is a *genuine issue for trial*." Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial."

Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (citations omitted; emphasis in the original) (quoting Fed. R. Civ. P. 56). There must be more than just a factual dispute; the fact in question must be material and readily identifiable by the substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

By reviewing substantive law, the court may determine what matters constitute material facts. Anderson, supra. "Only disputes over facts that might affect the outcome of the suit under governing law will properly preclude the entry of summary judgment." Id. at 248. A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." Id. The court must credit factual disputes in favor of the party resisting summary judgment and draw inferences favorable to that party if the inferences are reasonable, however improbable they may seem. Cole v. Cole, 633 F.2d 1083, 1092 (4th Cir. 1980). Affidavits filed in support of a Motion for Summary Judgment are to be used to determine whether issues of fact exist, not to decide the issues themselves. United States ex rel. Jones v. Rundle, 453 F.2d 147 (3d Cir. 1971). When resolution of issues of fact depends upon a determination of credibility, summary judgment is improper. Davis v. Zahradnick, 600 F.2d 458 (4th Cir. 1979).

In determining whether a genuine issue of material fact exists, the admissible evidence of the non-moving party must be believed and all justifiable inferences must be drawn in his or her

7

favor. Anderson, supra, at 255. In the end, the question posed by a summary judgment motion is whether the evidence "is so one-sided that one party must prevail as a matter of law." Id., at 252.

1. **Judicial Estoppel**

Judicial estoppel is an equitable doctrine "developed to prevent a party from taking a position in a judicial proceeding that is inconsistent with a stance previously taken in court." Zinkand v. Brown, 478 F.3d 634, 638 (4th Cir. 2007). The doctrine protects "the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment." New Hampshire v. Maine, 532 U.S. 742, 750 (2001); see also Folio v. City of Clarksburg, 134 F.3d 1211, 1217 (4th Cir. 1998) ("Judicial estoppel is an equitable doctrine that exists to prevent litigants from playing 'fast and loose' with the courts -- to deter improper manipulation of the judiciary.").

In determining whether to apply the doctrine of judicial estoppel, a court must first find that: "(1) the party to be estopped is advancing an assertion that is inconsistent with a position taken during previous litigation; (2) the position is one of fact instead of law or legal theory; (3) the prior position was accepted by the court in the first proceeding; and (4) the party to be estopped must have misled the court intentionally not inadvertently." Lowery v. Stovall, 92 F.3d 219, 224 (4th Cir. 1996). Here, defendants contend that (1) the initiation of this lawsuit is inconsistent with omitting the claim from the bankruptcy petition; (2) possessing such a claim is a position of fact; and (3) bankruptcy courts rely on potential claims in their adjudication. As such, they argue, the first three Lowery factors are satisfied. With respect to the fourth factor, defendants argue that, in the context of a bankruptcy proceeding, "a debtor's failure to satisfy their statutory duty to disclose is 'inadvertent' only when, in general, the debtor either lacks

knowledge of the undisclosed claims or has no motive for their concealment." Defendants' Brief (#42) at 8 (quoting Calafiore v. Werner Enters., Inc., 418 F.Supp.2d 795, 798 (D. Md. 2006)). Defendants contend that this fourth element is satisfied here because the plaintiff was aware of her claims at the time of her termination and had filed a Charge of Discrimination with the Department of Labor (DOL). Defendants further argue that her motive for concealment is also readily apparent by the fact that disclosing her claims would have increased her assets and therefore would have resulted in a less favorable Chapter 7 payment plan.

In arguing for the application of judicial estoppel, defendants rely on Evans v. Allied Air Enterprise, Inc., 2011 WL 4548313 (D.S.C. Sept. 30, 2011) *recommendation of Magistrate adopted in part* 2011 WL 4548307 (Seymour, J.). In Evans, however, the district court held that judicial estoppel would preclude the *plaintiff* from individually pursuing his claims. To the extent that the plaintiff's claims were property of the bankruptcy estate, the court reasoned, judicial estoppel did not apply to prevent the *Trustee* from pursuing the plaintiff's claims. Evans, 2011 WL 4548307, at *4.

Here, the bankruptcy court determined that plaintiff's failure to declare these claims was inadvertent. While the court agrees that plaintiff's FMLA and ERISA claims are property of the bankruptcy estate, the Trustee, however, has ratified this action and has expressly consented to the plaintiff continuing to prosecute the case. Application of the doctrine of judicial estoppel is, therefore, not warranted here.

    **2.    FMLA Claim**

Under the FMLA, an eligible employee[2] is entitled to twelve weeks of unpaid leave during any twelve-month period for certain purposes, including "to care for the spouse, or a son, daughter, or parent, of the employee, if such spouse, son, daughter, or parent has a serious health condition." 29 U.S.C. § 2612. Although presented as one count in the Amended Complaint, the plaintiff asserts two distinct causes of action under the FMLA. First, she alleges that the defendants interfered with her exercise of her FMLA rights by not allowing her to return to her position upon completion of her FMLA leave ("the interference claim"). Second, she alleges that the defendants retaliated against her for exercising her FMLA rights when they terminated her employment ("the retaliation claim").

### a. Interference Claim

An employer may not interfere with an employee's exercise of her right to take unpaid leave under the FMLA, nor may an employer discriminate against an employee for exercising or attempting to exercise this right. 29 U.S.C. § 2615(a)(1). An employee has a cause of action against her employer when she can prove the employer interfered with her exercise of FMLA rights and thereby caused her prejudice thereby. 29 U.S.C. § 2617; Ragsdale v. Wolverine World Wide, Inc., 535 U.S. 81, 89 (2002). The Act, however, "does not require an employee to be restored to his prior job after FMLA leave if he would have been discharged had he not taken leave." Yashenko v. Harrah's NC Casino Co., LLC, 446 F.3d 541, 547 (4th Cir. 2006). The federal regulations promulgated to enforce the FMLA provide, in pertinent part:

> An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period. An employer must be able to show that an employee would not otherwise have been employed at the time reinstatement is requested in order to deny restoration to employment.

---

[2] The Defendants concede that the plaintiff is an "eligible employee" within the meaning of the FMLA.

29 C.F.R. § 825.216(a). The Fourth Circuit has not yet held which party bears the burden of proof in an FMLA interference claim. See Yashenko, 446 F.3d at 549 (discussing circuit split on the issue).

Regardless of who bears the burden, defendants have presented a forecast of evidence that following the merger of two hospital systems, Haywood Regional Medical Center and WestCare, Inc. to form MedWest Health Systems, Inc., there was an inevitable duplication of positions and duties. Additionally, the newly formed hospital system was challenged with the need to reduce costs. Ultimately approximately 130 employees, including plaintiff, were terminated over the course of 2010 and into 2011 as a result of the merger. Millsaps Deposition (#42-6) at 7.

In response, plaintiff has not presented any forecast of evidence that presents a jury question on this issue. While plaintiff contends that "there is *prima facie* evidence of a violation under Section 2615(a)(1)," she fails to identify any specific evidence from which a reasonable jury could conclude that she would not have been terminated from her employment if she had not taken FMLA leave. She argues that in order to survive summary judgment on this issue, she merely needs to demonstrate that she was entitled to exercise her right to FMLA leave and that the right was denied.

Plaintiff's legal conclusion is mistaken as the case cited by her addresses an FMLA interference claim in the context of a Rule 12(b)(6) motion, which concerns sufficiency of the pleadings. As discussed above, plaintiff's burden at this point is to come forward with evidence on which a jury could find in her favor on each element of her claim. "In ruling upon a Rule 56 motion, a District Court must resolve any factual issues of controversy in favor of the non-moving party only in the sense that, where the facts specifically averred by that party contradict

11

facts specifically averred by the movant, the motion must be denied. That is a world apart from assuming that general averments embrace the specific facts needed to sustain the complaint." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990).

Turning to the evidence, plaintiff's primary basis for connecting the termination of her employment to her FMLA leave is its timing. "While timing is a relevant factor, it will rarely be independently sufficient to create a triable issue of fact." Mercer v. Arc of Prince Georges County, Inc., 532 F. App'x 392, 396-98 (4th Cir. 2013). Defendants have come forward with evidence that tends to show that it would have terminated the plaintiff as part of the reduction in force and due to her poor performance regardless of her FMLA leave; in contrast, plaintiff has not presented a forecast of evidence that would allow a jury to conclude otherwise. Defendants are entitled to summary judgment on the Plaintiff's FMLA interference claim.

### b. Retaliation Claim

The FMLA prohibits employers from retaliating against an employee for exercising his or her rights under the FMLA. See 29 U.S.C. § 2615(a)(2). Because they are analogous to Title VII claims, FMLA retaliation claims are analyzed under the burden-shifting framework of McDonnell Douglas Corp. v. Green. Yashenko v. Harrah's NC Casino Co., 446 F.3d 541, 550-51 (4th Cir. 2006).

In order to prevail on an FMLA retaliation claim, a plaintiff must make a prima facie showing (1) that she engaged in protected activity (i.e., taking FMLA leave); (2) that the defendant employer took adverse action against her; and (3) that the adverse action was causally connected to her protected activity. Id. If a plaintiff makes this prima facie showing, then the burden shifts to the defendant to offer a legitimate, non-discriminatory explanation for the alleged adverse employment action. Id. "This burden is one of production, not persuasion; it

can involve no credibility assessment." Reeves v. Sanderson Plumbing Products, Inc., 530 U. S. at 142 (internal quotations omitted). If a defendant articulates such a reason, the burden then shifts back to the plaintiff to establish, by a preponderance of the evidence, that the employer's non-discriminatory explanation is a pretext for unlawful retaliation under the FMLA. Ross v. Communications Satellite Corp., 759 F.2d 353, 365 (4th Cir. 1985).

Defendants do not dispute that the plaintiff exercised her right to FMLA leave and that she was terminated. They contend, however, that plaintiff has failed to establish a causal connection between her protected activity and her termination. As noted above, plaintiff's primary basis for connecting the termination of her employment to her FMLA leave is its timing, which by itself is not sufficient to create a triable issue of fact under the circumstances. See Mercer, 532 F. App'x at 398. This is particularly true here, where defendants have presented a forecast of evidence that the decision to terminate plaintiff was made in March 2010, long before she sought and was afforded FMLA leave. See Millsaps Affidavit ¶ 2.[3]

Even if plaintiff could establish a *prima facie* case, defendants have offered a forecast of evidence that plaintiff was terminated for legitimate, non-discriminatory reasons. Millsaps testified that both WestCare and HRMC had hired an operations advisor to help with labor and productivity issues going into the merger. Based on the FTE's per adjusted occupied bed, it was clear that there were too many employees. Millsaps, 15:13-25:16-19. Therefore, after several months of reviewing what organizational and personnel changes needed to be made, Michael Poore, the CEO of HRMC, issued a revised reduction-in-force policy in August 2010. Plaintiff

---

[3] In March 2010, plaintiff and Kim Kwiatkowski were serving as Employment Managers at HRMC, and Eric Cochran was serving in a similar capacity at WestCare. On March 26, 2010, Millsaps met with Becky Wilkes, formerly the HR Director for WestCare, and Debra Rapert, formerly the HR Director for HRMC, to discuss issues of restructuring. [Rapert Dep., 9:6-25, 10:1-4; Millsaps Affidavit ¶ 3]. After discussing the restructuring options with Rapert and Wilkes, Millsaps decided that the plaintiff's position should be eliminated, as many of plaintiff's job duties were performed by Eric Cochrane, while other duties could be handled by Kim Kwiatkowski. [Millsaps, 13:4-25, 14:1-8; Millsaps Affidavit ¶ 4]. Plaintiff did not seek FMLA leave with respect to the care of her son until April 22, 2010. [Doc. 10-5].

was one of thirty other employees who were terminated at that time. Millsaps Dep. at 19:3-19, 20:3-18. Ultimately, more than 130 employees were terminated over the course of the next year. Millsaps Dep. at 17:20-23.

Defendants have provided additional justification for terminating plaintiff: she had been counseled, placed on a performance improvement plan, and had failed to show any significant improvement as of March, 2010, when the decision was made to eliminate her position and terminate her employment. Rapert Dep., 16:5-25, 17:1-25, 18:1-17; Kwiatkowski Dep., 8:4-15, 11:9-25, 12:1-24, 19:3-11; Millsaps Affidavit ¶ 6. Debra Rapert, plaintiff's immediate supervisor, testified that the plaintiff "was an employee that had some issues with boundaries, and often made decisions without what I felt was proper counsel." Rapert Dep. at 16:5-8. "[S]he had a habit of speaking about things in human resources that should have been kept confidential." Rapert Dep. at 17:19-21. Kim Kwiatkowski had received complaints from managers and employees about plaintiff's behavior "in regards to not receiving timely application, because the hiring manager was looking to fill those vacancies." [Kwiatkowski Dep. at 8:8-11]. Kwiatkowski explained:

> Plaintiff also would "go over to the hospital, and she would talk about everybody within the HR office and just make inappropriate comments. And she's a representative of human resources. So to go to other departments and speak negatively about the employees, she would speak negatively about certain directors and saying they're not qualified, they never should have been in their role. And she would then come back to human resources and talk about the people at the hospital, made inappropriate comments about people in their roles, and she don't know – Julia knew people's pay rates, so, you know why certain people were getting paid a certain amount. And that's not for discussion.

Kwiatkowski Dep. at 11:23-25, 12:1-13. Debra Rapert placed plaintiff on a work improvement plan in late 2009 or early 2010. Rapert Dep. at 17:2-4. Debra Rapert and Kim Kwiatkowski met again with plaintiff about her behavior and performance issues and plaintiff was not showing

14

enough progress. Millsaps Dep. at 12:15-23. According to her testimony, it was these performance issues together with the need to eliminate duplication in positions upon which Millsaps based her decision to eliminate the plaintiff's position and terminate her employment. Millsaps Dep. at 13:1-7.

Defendant HRMC has, therefore, offered legitimate, non-discriminatory reasons for its decision to eliminate plaintiff's position and terminate her employment. When an employer provides a nondiscriminatory motive for termination, "it is not [the court's] province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination." See Hawkins v. PepsiCo, Inc., 203 F.3d 274, 279 (4th Cir. 2000) (quoting DeJarnette v. Corning, Inc., 133 F.3d 293, 299 (4th Cir. 1998)).

At this point, the burden shifts back to plaintiff to forecast evidence to show that the defendants' articulated reasons for terminating her employment were a pretext and that the real reason was because she exercised her rights under the FMLA. To show pretext, plaintiff points to the fact that subsequent to her termination MedWest hired Trisha Wilson (now Ray) in an HR Assistant position. Defendants have presented a forecast of evidence, however, that Wilson's job involved data entry for new hires, learning and using a new computer system, assisting applicants fill out applications on the computer, answering questions and ordering supplies. [Kwiatkowski Dep. at 28:4-25, 29:1-5]. In short, Wilson's responsibilities were not those of the Plaintiff.

Plaintiff also takes issue with the decision to terminate her employment, arguing that her performance was satisfactory. Queen Dep. at 69:19-23. A plaintiff, however, cannot prove pretext by merely disagreeing with the evaluations given by her supervisor. Hawkins, 203 F.3d at 280. "It is not enough for a plaintiff merely to impugn the veracity of the employer's

justification; he must 'elucidate specific facts which would enable a jury to find that the reason given is not only a sham, but a sham intended to cover up the employer's real [and unlawful] motive' of discrimination." Azimi v. Jordan's Meats, Inc., 456 F.3d 228, 246 (1st Cir. 2006) (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 824 (1st Cir. 1991) (citations omitted). Having failed to present a forecast of evidence that HRMC's articulated reasons are a pretext for discrimination, plaintiff's FMLA retaliation claim also fails.

### 3. ERISA Claim

Plaintiff's minor son suffered from a serious and complicated medical condition. He was diagnosed with primary generalized seizure disorder manifesting in frequent and prolonged periods of disorientation and confusion, possible Mitochondrial disorder, possible autonomic dysfunction, Ehlers Danlos Syndrome, scoliosis, chest wall deformity and learning problems. Plaintiff's Affidavit at ¶ 5; Consult Note, Administrative Record, Doc. 49-1 at 40-41; Dr. Jackson letter. Due to his serious medical condition, plaintiff's minor son required homecare nursing during late 2009 and into 2010 and beyond. Plaintiff's Affidavit at ¶ 6; Dr. Jackson letters, Administrative Record, Document 49-1 at 2-3.

The stated purpose of the HRMC Medical Care Plan is "to provide the medical care benefits as set forth herein for the Participants." Plan (# 9-1) at 5. The Plan provides for payment for home health care and private duty registered nurses. Id. at 9. The HRMC Medical Care Plan gave pre-authorization for skilled nursing care for plaintiff's minor son from November 6, 2009 to January 4, 2010. On January 26, 2010, however, the Plan Administrator determined that skilled nursing was no longer medically necessary for plaintiff's minor son. Specifically, the

16

Plan Administrator noted that the Plaintiff's "[f]amily appears well educated and capable of providing care in the absence of private duty nurse. Patient no longer meets home nursing criteria." Wells Fargo Decision Summary, Administrative Record, Doc. 49-1 at 12-13.[4]

The Plaintiff appealed that decision, and coverage was once again denied based on an independent peer review report prepared by Dr. Lawrence Lutner, a board-certified pediatrician with the Peer Review Services Division of MES Solutions. Peer Review Report, Doc. 42-4; Millsaps Dep. at 23-24, 26. Notwithstanding the fact that such was required by the Plan (see Article VII, 7.2, D1, Appeal of Adverse Benefit Determination, Review Procedures), Millsaps testified that HRMC chose to have an entity with no connection to HRMC to avoid any appearance of favoritism in that plaintiff worked in the HR Department. Millsaps Dep. at 23-24, 26. After receiving the report, which concluded that the home nursing care was not medically necessary, the Benefits Committee informed plaintiff that it concurred with the outside evaluator in denying her benefits. Millsaps Dep. at 27; May 7, 2010 Letter, Doc. 42-4 at 11. When asked in her deposition what the Benefits Committee considered in making its final determination, Millsaps testified: "Okay. Based on the fact that the medical director at Wells Fargo reviewed it, and, again, did not uphold the claim. And, secondly, that it went to an outside reviewer, and it was also deemed at that point not to be medically necessary. Again, we do not have medical degrees. I am going to defer to those that do." Millsaps Dep. at 30.

The parties agree that the Care Plan gives the Plan Administrator discretionary authority to determine eligibility for benefits. Therefore, this court must review the administrator's

---

[4] Article III, 3.5 H, 1.a of the Plan provides that home health care expenses are covered by the Plan where an attending physician certifies that: (1) hospitalization or confinement in an extended care facility would otherwise be required if home health care were not available and (2) that medically necessary treatment and care is not available from members of the participant's immediate family or other residents of the household without causing undue hardship. [Doc. 10-1 at 14].

decision only for an abuse of discretion and "must not disturb . . . the decision if it is reasonable, even if the court itself would have reached a different conclusion." Fortier v. Principal Life Ins. Co., 666 F.3d 231, 235 (4th Cir. 2012). In determining whether the administrator abused its discretion, the Court is guided by the following factors:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan, 201 F.3d 335, 342-43 (4th Cir. 2000).

Plaintiff contends that the Plan's denial of the claim for her son's home skilled nursing was unreasonable, and an abuse of discretion, as such denial was inconsistent with the purpose of the Plan, and inconsistent with the earlier decision in the claim that skilled nursing care was medically necessary. Plaintiff further contends that defendants violated the provisions of the Plan by deferring on appeal to the initial decision makers.[5] Finally, plaintiff argues that the defendants failed to consider key medical evidence (namely a March 2010 letter of minor son's

---

[5] The Plan documents provide that "[T]he Benefit Committee will conduct its review without deference to the initial benefit determination and taking into account all comments, documents, records and other information submitted by Claimant relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination." [Summary Plan, Doc. 9-2 at 7].

18

treating physician) in deciding the claim.[6] As such, plaintiff contends that there is a genuine issue of material fact on plaintiff's ERISA claim for medical benefits.[7]

As the defendants correctly point out, however, Dr. Jackson's March 2010 letter is nothing other than a restatement of several other letters Dr. Jackson wrote recommending that home health care be continued. As such, this letter does not provide any information in addition to the information relied upon to make the earlier determination. Moreover, in none of his letters does Dr. Jackson certify, as required by the Plan that (1) hospitalization or confinement in an extended care facility would otherwise be required if home health care were not available or (2) that medically necessary treatment and care is not available from members of the participant's immediate family or other residents of the household without causing undue hardship. See (#10-1) at 14. As such, the Plan Administrator's apparent failure to consider Dr. Jackson's March 2010 letter, which summarized several other letters he wrote, did not amount to an abuse of discretion.

In sum, defendants have offered substantial evidence that the Plan Administrator did not abuse its discretion in concluding that home health care for the plaintiff's son was not medically necessary. The terms of the Plan were followed, and the Benefits Committee properly deferred to the decision of the Third Party Administrator. Defendants are entitled to summary judgment on the plaintiff's ERISA claim.

---

[6] On March 17, 2010, Plaintiff's minor son's pediatrician Dr. Jackson provided a letter to the plaintiff describing her son's condition and stating that home nursing was medically necessary to monitor his neurological status and blood pressure. [Jackson Letter, Ex. 10]. While the plaintiff asserts that she provided this letter to the Plan Administrator, it is not contained in the administrative record.

[7] The plaintiff further contends that because HRMC acted in a dual role when evaluating Plaintiff's claim by its Benefits Committee, and being responsible for payment of the claim, HRMC had a conflict. The plaintiff acknowledges, however, that Wells Fargo was the Third Party Administrator for the Plan, thus making it irrelevant that the employer was acted in this dual capacity. See Champion v. Black & Decker (U.S.) Inc., 550 F.3d 353, 362 (4th Cir. 2008).

**ORDER**

**IT IS, THEREFORE, ORDERED** that defendants' Motion to Dismiss (#25) is denied, the Motion for Summary Judgment (#41) is **GRANTED** in part and **DENIED** in part as herein provided, and this action is **DISMISSED**. The Clerk of Court is instructed to enter a Judgment consistent with this Memorandum of Decision and Order.

Signed: August 29, 2014

Max O. Cogburn Jr.
United States District Judge